### In re KKEMKO, INC., Debtor.
### Bankruptcy No. 94–1430.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

April 26, 1995.

---

Gregory R. Wilson, Cincinnati, OH, for debtor.

William B. Strubbe, Cincinnati, OH, for creditor Todd.

### DECISION and ORDER ON TODD MOTION FOR RELIEF FROM STAY

BURTON PERLMAN, Bankruptcy Judge.

This Chapter 11 case was filed November 16, 1994. The petition recites that the business of the debtor is "Operation of Marina for Pleasure Craft." Schedule D filed with the bankruptcy petition makes reference to Robert Todd as the holder of a mortgage in the amount of $1.550 million. Debtor filed a disclosure statement and a plan of reorganization on March 23, 1995. On March 17, 1995, creditor Todd filed a motion for relief from stay. Todd's motion is very specific. In it, he asserts that the assets of debtor constitute single asset real estate within the definition of 11 U.S.C. § 101(51B), and because debtor failed to file a plan of reorganization within 90 days of the filing of the case, pursuant to 11 U.S.C. § 362(d)(3), he, Todd, is entitled to relief from the automatic stay of § 362. The matter came on for an evidentiary hearing at which time both parties presented evidence.

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(G).

The parties filed memoranda preparatory to the hearing, and in addition filed pretrial statements. These documents frame the issues to be dealt with by the court as, first, whether the holdings of debtor are to be characterized as "single asset real estate," and, second, whether in fact Todd was a creditor of this debtor who had standing to bring the present motion.

■ We turn now to the first question, whether debtor's marina comprises single asset real estate. In the definition section of

the Bankruptcy Code, at 11 U.S.C. § 101(51B), is to be found the definition:

(51B) "single asset real estate" means real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto having aggregate non-contingent, liquidated secured debts in an amount no more than $4,000,000;

&ast; &ast; &ast; &ast; &ast; &ast;

Also relevant here is § 362(d)(3) which provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

&ast; &ast; &ast; &ast; &ast; &ast;

(3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90–day period)—

(A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or

(B) the debtor has commenced monthly payments to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien), which payments are in an amount equal to interest at a current fair market rate on the value of the creditor's interest in the real estate.

The purpose that § 362(d)(3) serves is, where there is a single asset real estate Chapter 11 case, to impose an expedited time frame for filing a plan. The plan in such a case must be filed within 90 days after the filing of the case. This requirement is noteworthy in two respects. First, it sets a time for filing a plan in this species of Chapter 11 case. There is no time requirement in the Bankruptcy Code for the filing of a plan for any other kind of Chapter 11 case. Second, the consequence of not meeting that requirement is that the automatic stay of § 362 may be lifted without further ado. This expedites even further the expedited scheme for dealing with relief from stay matters set forth in § 362(e). In that subsection, Congress has already expressed a concern that relief from stay matters be expedited.

Prior to the Bankruptcy Reform Act of 1994, which became effective October 22, 1994, there was no express mention in the Bankruptcy Code of single asset real estate. It was only in that enactment that Congress took special notice of that kind of Chapter 11 case and singled it out for the special treatment in § 362(d)(3) to which we have alluded above.

Having reviewed the pertinent statutory background, we turn to the evidence. From the evidence adduced at the hearing, the court finds the following facts. Debtor's marina (known as "Anchor Cove") is not on the Ohio River proper, but is on an inlet known as Muddy Creek, connected to the Ohio River. Anchor Cove has slips for approximately 270 boats. This means that there are moorings for that many boats at the several docks or piers (these terms were stated by the parties to be interchangeable) which are to be found at Anchor Cove. The water level at Anchor Cove rises and falls with the river. The docks are so constructed that they rise and fall with the water level, yet are kept captive to the marina. The evidence established that the mechanism for achieving this involves "spud poles" embedded in the banks of the marina real property. A ring that is free to ride up and down on each spud pole encircles the pole, and the ring is rigidly affixed to the docking by tack welding or bolts. Debtor occupies some forty acres of real estate upon which may be found several buildings, a picnic area for the use of boaters, etc. Debtor now provides, or will provide, services for boaters such as boat repair and dry land storage for boats. Debtor stocks food supplies for boaters to purchase, and

expects to reactivate a fuel dock so that it may provide fuel to boaters.

We begin our exploration of the phrase "single asset real estate" by noticing that the definition itself at § 101(51B) says "other than residential real property with fewer than 4 residential units," a clause which gives an intimation of what Congress understood it was dealing with in this definition. Obviously, residential real property with more than four residential units is certainly single asset real estate. Thus, apartment buildings and residential projects are within the scope of the definition. Should anything else be included? For an answer, we look to the literature and to case law.

Anyone who works in the area of bankruptcy knows that the Bankruptcy Reform Act of 1994 did not introduce the phrase "single asset real estate" into bankruptcy cognizance. It is, indeed, a common term in bankruptcy, and has been used for many years in the bankruptcy area. Witness:

> Single asset Chapter 11 cases have been filed in rapidly increasing numbers in recent years. Hit by real estate recessions in the mid–1970's and mid–1980's, innumerable single asset partnerships and corporations, formed only to acquire and manage their one investment asset, have sought the protection of the bankruptcy court. Often filed with little purpose but to postpone foreclosure, and with no serious hope of reorganization, single asset cases have met harsh reactions from many courts.

*   *   *   *   *   *

> Single asset bankruptcy cases are not new. They first blossomed under Chapter XII of the Bankruptcy Act of 1898, which was enacted as a part of the Chandler Act in 1938. Chapter XII, entitled "Real Property Arrangements by Persons Other Than Corporations," was precipitated by the then-common situation in which an individual or partnership owned real estate for which it was obligated on bond issues secured by trust indentures and owned by large numbers of individual holders. Although Chapter XII was not limited to "single asset" cases, most debtors who sought its protection owned a single parcel of real estate, typically a developed property such as an apartment house or office building. Increasing numbers of such individuals and partnerships found themselves unable to pay their bond issues during the depression years of the 1930's, particularly in Chicago and in some northeastern cities. Chapter XII was designed for these individual and partnership debtors.

*   *   *   *   *   *

H. Miles Cohn, *Single Asset Chapter 11 Cases*, 26 Tulsa L.J. 523 (1991).

Beyond that, cases employing the phrase are legion. In recent years the term arises often in connection with classification problems in Chapter 11. *See, e.g., In re Boston Post Road Ltd. Partnership*, 21 F.3d 477 (2d Cir. 1994); *In re D & W Realty Corp.*, 165 B.R. 127 (S.D.N.Y.1994); *In re Baxter & Baxter, Inc.*, 172 B.R. 198 (Bankr.S.D.N.Y.1994); *In re Baldwin Park Towne Ctr., Ltd.*, 171 B.R. 374 (Bankr.C.D.Cal.1994). The term is familiar in other bankruptcy contexts as well, *e.g., In re Humble Place Joint Venture*, 936 F.2d 814 (5th Cir.1991) (affirming dismissal of Chapter 11 case for lack of good faith in filing petition); *In re Lake Ridge Assoc.*, 169 B.R. 576 (E.D.Va.1994) (affirming decision granting relief from stay because debtor intended to liquidate its sole asset and go out of business, and property therefore was not necessary to effective reorganization); *In re Vienna Park Prop.*, 125 B.R. 84 (S.D.N.Y. 1991) (considering whether case should be transferred from state where debtor partnership was located to state where apartment building was located); *In re Sunbelt Savings Ass'n*, 95 B.R. 55 (N.D.Tex.1988) (vacating bankruptcy court order continuing stay); *In re Mayer Pollock Steel Corp.*, 174 B.R. 414 (Bankr.E.D.Pa.1994) (in considering feasibility of plan, distinguishing debtor as operating business rather than single asset real estate); *In re Dollar Assoc.*, 172 B.R. 945 (Bankr. N.D.Cal.1994) (denying confirmation under new value exception to absolute priority rule because plan involved lien-stripping in single asset real estate case); *In re Monica Road Assoc.*, 147 B.R. 385 (Bankr.E.D.Va.1992) (granting relief from stay to foreclose on unimproved land).

■ The drafters and promulgators of § 101(51B) were working in a bankruptcy context, and we have no doubt that their intention in using the phrase "single asset real estate" grew out of the common usage of that term in bankruptcy. By it, they meant a building or buildings which were intended to be income producing, or raw land. With that interpretation, debtor's marina is not embraced within the phrase. Only by applying concepts of real estate law, fixture law, can the holdings of debtor be regarded as a part of debtor's real estate, and it is clear to us that it is bankruptcy law which is determinative here, not a consideration of what is real estate for purposes of state real estate law. Because Todd's motion is based entirely upon a position that debtor's docks are appurtenant to debtor's land and are therefore to be regarded as real estate, it must fail. This is not a single asset real estate case.

■ Another concept which has a place in our consideration of the present controversy is a determination whether what is under consideration is a business as contrasted to a piece of real estate simply held for income. The definition at § 101(51B) requires that consideration. That distinction becomes vivid in a recent case in which the court was considering confirmation of a Chapter 11 plan. *In re Mayer Pollock Steel Corp.*, 174 B.R. 414 (Bankr.E.D.Pa.1994). That case made the clear distinction between a single asset real estate case which would today be within the definition of § 101(51B) and one in which the business of processing scrap steel was being conducted. *Id.* at 423.

Application of that distinction reenforces our conclusion that what is at hand is not subject to § 362(d)(3). A marina has for its business the provision of moorings for boats. The evidence established that the business of the marina is something more than simply rental of moorings. It stores, repairs, and winterizes boats. The marina provides showers and a pool, as well as other activities for those boaters who use it to moor their boats. It sells gas, an activity which according to debtor's disclosure statement it intends to offer. Other amenities such as concessions also produce revenue for the debtor from the operation of the marina. For these reasons, as well, we hold that debtor's marina does not come within the definition of "single asset real estate" as that phrase is used in § 101(51B).

In closing, we remark that in enacting §§ 101(51B) and 362(d)(3), providing for extraordinary expedition in single asset real estate cases, Congress was motivated by a desire to accord relief in a particular familiar bankruptcy situation. That situation is where the owner of an encumbered building is attempting to avert loss of his building to his major lender who is grossly undersecured, and where there is no real hope that the owner can come forth with a viable confirmable Chapter 11 plan. The present situation, in any case, has not been shown to fit within that scenario.

In light of the foregoing discussion, we conclude that Todd is not entitled to the relief which he seeks and his motion for relief from stay is denied. Having reached that conclusion, it is not necessary for us to reach the question of whether Todd has sufficient interest to maintain the present motion.

So Ordered.