In re **PHILMONT DEVELOPMENT COMPANY, Philmont Meadows Ltd. Partnership # 1, Philmont Meadows Ltd. Partnership # 2 and Philmont Meadows Ltd. Partnership # 3, Debtors.**

**Bankruptcy No. 94–17974SR.**

United States Bankruptcy Court, E.D. Pennsylvania.

May 12, 1995.

Carol B. McCullough, McCullough Law Offices, P.C., Warminster, PA, for debtors.

Michael G. Menkowitz, Fox, Rothschild, O'Brien & Frankel, Philadelphia, PA, for Chemical Bank.

Joseph F. Minni, Asst. U.S. trustee, Office of U.S. Trustee, Philadelphia, PA.

## *OPINION*

STEPHEN RASLAVICH, Bankruptcy Judge.

Before the Court is the Motion of Chemical Bank For Relief From the Automatic Stay (the "Motion") in each of the above jointly administered Debtors cases. An Answer in opposition to the Motion has been filed on behalf of the Debtors, Philmont Development Company, Philmont Meadows Ltd. Partnership # 1, Philmont Meadows Ltd. Partnership # 2 and Philmont Meadows Ltd. Partnership # 3 ("the Debtors"), and an evidentiary hearing was held on April 20, 1995. For the reasons discussed below, the Motion will be granted in part and denied in part.

### Background

The facts underlying the Motion are not in dispute. Debtor Philmont Development Company ("Philmont Development") is the general partner of the three Debtor limited partnerships, Philmont Meadows Ltd. Partnership # 1, Philmont Meadows Ltd. Partnership # 2 and Philmont Meadows Ltd. Partnership # 3 (the "limited partnerships" or "Debtor limited partnerships"). Commencing in or about 1986, Philmont Development built a series of virtually identical semi-detached houses, and apparently financed the construction with a single construction loan. Philmont Development subsequently sold a number of these semi-detached houses to each of the three Debtor limited partnerships. Specifically, Debtor Philmont Meadows Ltd. Partnership # 1 purchased the series of semi-detached houses located at 13020–13030 Blakeslee Drive, Philadelphia, Pennsylvania; Debtor Philmont Meadows Ltd. Partnership # 2 purchased the series of semi-detached houses located at 13008–13018

Blakeslee Drive, Philadelphia, Pennsylvania; and Debtor Philmont Meadows Ltd. Partnership #3 purchased the series of semi-detached houses located at 13032–13040 Blakeslee Drive, Philadelphia, Pennsylvania. In this respect, each limited partnership along with Philmont Development granted a mortgage against their realty to Chemical Bank's predecessor, Bell savings Bank.

Philmont Development's assets are entirely comprised of its partnership interests in each of the three limited partnerships, and two other undeveloped building lots. The only assets owned by the limited partnerships are the semi-detached houses each individual partnership purchased from Philmont Development.

After the Debtors defaulted on the aforesaid mortgages, Chemical Bank filed a Complaint in Confession of Judgment against each of the Debtor limited partnerships and Philmont Development in the Philadelphia Court of Common Pleas. On August 3, 1994, a judgment in favor of Chemical Bank was entered against each of the individual limited partnerships and Philmont Development in amounts ranging from approximately $430,000 to $535,000.

Philmont Development filed a voluntary petition under Chapter 11 of the Bankruptcy Code on December 1, 1994. Philmont Meadows Ltd. Partnership #1, Philmont Meadows Ltd. Partnership #2 and Philmont Meadows Ltd. Partnership #3 each filed a voluntary petition under Chapter 11 of the Bankruptcy Code on December 5, 1994. In addition to Chemical Bank's secured claim, the only secured claim listed by the limited partnerships on their bankruptcy schedules is a real estate tax debt owed to the City of Philadelphia in an amount ranging from $50,000 to $60,000 per Debtor limited partnership.

On March 19, 1995, approximately one hundred and three (103) days subsequent to the filing of the limited partnerships' petitions, Chemical Bank filed the instant Motion seeking relief from the automatic stay in each of the jointly administered Debtors' cases. As of the hearing date, April 20, 1995, the Debtors had not filed a plan of reorganization.

**Discussion**

■ In seeking relief from the automatic stay, Chemical Bank asserts that the Debtors' bankruptcy cases fall within the purview of 11 U.S.C. § 101(51B). Section 101(51B) provides a definition of "single asset real estate." If Chemical Bank is correct that the Debtors' bankruptcy cases are "single asset real estate" cases, Chemical Bank would be entitled to an order granting it relief from the automatic stay, because the Debtors have failed to file a plan of reorganization within 90 days of the entry of the orders for relief as required by section 362(d)(3), which provides in relevant part:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

.    .    .    .    .

(3) with respect to a stay of an act against *single asset real estate* under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless not later than the date that is 90 days after the entry of the order for relief (or such date as the court may determine for cause by order entered within that 90–day period)—

(A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time. . . .

11 U.S.C. § 362(d)(3)(A) (emphasis added).

For this purpose,

"[S]ingle asset real estate" means real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor and on which no substantial business is being conducted by a debtor other than the business of operating the real property and the activities incidental thereto having aggregate non-

contingent liquidated secured debts in an amount no more than $4,000,000.

11 U.S.C. § 101(51B).

■ Sections 101(51B) and 362(d)(3) were recently enacted as part of the Bankruptcy Reform Act of 1994. The Court has not identified any decisions which fully discuss section 101(51B) or 362(d)(3) in this context. Since the legislative history of section 101(51B) and 362(d)(3) is not illuminating, the Court relies primarily on its own interpretation of the seemingly plain language of the statute in interpreting the phrase "single asset real estate." That is not to say, however, that the Court is writing on a blank slate. The terms single asset case, or single asset real estate case, are well-known and often used colloquialisms which essentially refer to real estate entities attempting to cling to ownership of real property in a depressed market, much like the instant Debtors, rather than businesses involving manufacturing, sales or services. *See In re Mayer Pollock Steel Corp.*, 174 B.R. 414, 422–23 (Bankr. E.D.Pa.1994). The drafters of sections of 101(51B) and 362(d)(3) were aware of the colloquial use of the phrase "single asset real estate," and the Court believes that their intention in using that phrase grew out of its previous colloquial and common usage. Moreover, the drafters of sections 101(51B) and 362(d)(3) were obviously attempting to implement a mechanism by which a species of cases, "single asset real estate" Chapter 11 cases, would be forced to proceed on an expedited track. Other Chapter 11 debtors do not face the loss of the protections of the automatic stay for failure to file a plan of reorganization within a specified time period. Accordingly, the scope of real estate enterprises that fall within the purview of section 101(51B) is significant. Determining the

scope of section 101(51B) is the principal issue in the instant case.

■ Section 101(51B) enumerates four criteria which must exist before a bankruptcy case falls within the scope of section 101(51B). First, real property constituting a single property or project, other than residential real property with fewer than 4 residential units, falls within the scope of section 101(51B). Second, that real property must generate substantially all of the income of the debtor. Third, the debtor must not be involved in any substantial business other than the operation of its real property and the activities incidental thereto. Fourth, the debtor's aggregate non-contingent liquidated secured debt must be less than $4,000,000.[1]

In the instant case, the Debtor limited partnerships own real property consisting of more than four residential units. The business conducted by each of the limited partnerships is the operation and management of their real property and the activities incidental thereto. The gross income of the limited partnerships is comprised of the rentals derived from their real property. The aggregate non-contingent liquidated secured debt of each limited partnership is significantly less than $4,000,000.[2] For purposes of determining whether the limited partnerships' bankruptcy cases are "single asset real estate" cases pursuant to section 101(51B), the only remaining question is whether the limited partnerships' series of semi-detached houses fall within the scope of the types of real property enterprises contemplated by the drafters of section 101(51B).

■ In determining whether or not the limited partnerships' semi-detached houses are the type of real property which constitute a "single property" or "single project," the Court has considered the many cases which

---

1. Philmont Development's assets are limited to partnership interests in the three limited partnerships and two undeveloped building lots. For this reason, and because Philmont Development's purpose is not the operation of real property nor is rental income its direct source of income, Philmont Development's bankruptcy case is clearly not a single asset real estate case. Thus, Chemical Bank's reliance on section 362(d)(3) is ill-founded, and its Motion for Relief as to Philmont Development will be denied.

2. The secured obligations of the limited partnerships include Chemical Bank's judgments against each individual limited partnership and Philmont development, which range from approximately $430,000 to $535,000, and the individual limited partnerships real estate tax obligation to the City of Philadelphia, ranging from $50,000 to $60,000 per Debtor limited partnership.

discuss the common type of single asset real estate case, as that phrase was used colloquially, before the enactment of section 101(51B). That common situation, i.e., typically an apartment building, office building, or "strip" shopping center owned by an entity whose sole purpose was to operate that real estate with monies generated by the real estate, clearly falls within the criteria enumerated in section 101(51B).

■ The Court has already determined that the criteria enumerated in section 101(51B) are seemingly present in the instant limited partnership cases. The Court moreover concludes that the particular type of property in question here falls squarely within the purview of the statute. In this respect, the Court is strongly influenced by the drafters decision to include two separate classifications of real property within the purview of section 101(51B). Under section 101(51B), real property includes "single property" as well as "single project[s]." The Court is convinced that even if the Debtor limited partnerships' real property does not fall within the scope of a "single property," because it consists of a string of semi-detached dwellings, the term "single project" can reasonably be interpreted as broad enough to encompass the series of semi-detached houses owned by the limited partnerships. In *In re KKEMKO, Inc.,* 181 B.R. 47 (Bankr.S.D.Ohio 1995), the Court discussing section 101(51B) said that any "residential real property with more than four residential units is certainly single asset real estate." *Id.* at 50. The *KKEMKO* court went on to say that "apartment buildings and *residential projects* are within the [scope of section 101(51B)]. *Id.* (emphasis added).

In this vein, the President of Philmont Development, Ramon Garfinkel, testified that although he did not treat the financing of the construction of the semi-detached houses as a single project, the bank did. Garfinkel testified that construction of the semi-detached houses was financed with a construction loan provided by First Federal Savings and Loan to Philmont Development. Two years later, the individual limited partnerships each purchased several of the semi-detached houses from Philmont Development, at which time

Philmont Development and the individual limited partnerships signed a note and granted a mortgage to Bell Savings Bank. On the basis of the foregoing, the Debtors have not persuaded the Court that the Debtors' real estate enterprise should be considered anything other than a single project. The Court, in particular, does not believe it is legally significant that Philmont Development built all of the semi-detached houses and then separately sold a discrete number thereof to each limited partnership. The fact remains that each limited partnership is operating real property consisting of more than 4 residential units; and that the limited partnerships are not conducting any substantial business other than managing these residential units which, in turn, provide all of each Debtor limited partnerships' income.

■ The Debtors argue that their real property does not fall within the purview of section 101(51B), because each semi-detached house should be considered two individual single properties. In other words, the Debtors' position is that each of the semi-detached units is a separate mailing address, and is, therefore, a single property. Debtors' counsel argued repeatedly throughout the hearing that since the semi-detached houses are themselves two single properties, the language of section 101(51B) itself, which limits the scope of a single asset real estate case to a single property or project, *"other than residential real property with fewer than 4 residential units,"* precludes, as a matter of law, a determination that the instant Debtors' cases fall within the purview of section 101(51B).

As already noted, section 101(51B) provides that "single asset real estate" means real property constituting a *single property or project."* In other words, the drafters of section 101(51B) defined single asset real estate cases to include two separate classifications, single properties and single projects. It is an "elementary canon of construction that a statute should be interpreted so as not to render one part inoperative." *Colautti v. Franklin,* 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596 (1979). The Debtors' argument that the semi-detached houses are two single properties, and, accordingly, are

precluded, as a matter of law, from the purview of section 101(51B) does not take into account the two separate classifications drawn by the drafters within section 101(51B). Accordingly, the Court rejects the Debtors' position. To do otherwise, would render the phrase "single project" in section 101(51B) inoperative.

For all the foregoing reasons, the Court concludes that each of the limited partnerships constitute a "single project" within the purview of section 101(51B). Accordingly, since the Debtor limited partnerships did not file a plan of reorganization within 90 days of the filing of their bankruptcy petitions, Chemical Bank is entitled to relief from the automatic stay pursuant to section 362(d)(3) in each of the jointly administered Debtor limited partnership cases.

An Order consistent with the foregoing conclusions will be entered.

### ORDER

AND NOW, this 12th day of May 1995, upon consideration of the Motion of Chemical Bank for Relief from the Automatic Stay (the "Motion") in each of the above jointly administered Debtors cases, and after a hearing held on April 20, 1995, it is hereby

ORDERED that:

1. The Motion shall be and hereby is denied as to Debtor Philmont Development Company; and

2. The Motion shall be and hereby is granted as to Debtors Philmont Meadows Ltd. Partnership # 1, Philmont Meadows Ltd. Partnership # 2 and Philmont Meadows Ltd. Partnership # 3.