### In re OCEANSIDE MISSION ASSOCIATES, Debtor.

**Joseph Kraatz, Sr., as Trustee under the Trust dated December 10, 1971, Movant,**

**Oceanside Mission Associates, Respondent.**

Bankruptcy No. 95–08308–B11. R.S. No. 3161.

United States Bankruptcy Court, S.D. California.

Jan. 25, 1996.

■■■

---

Richard R. Schwabe, Vista, CA, for Movant.

Allan H. Ickowitz, Donna M. Gallarello, Nossaman, Guthner, Knox & Elliott, Los Angeles, CA, for Respondent.

MEMORANDUM DECISION

PETER W. BOWIE, Bankruptcy Judge.

The senior secured creditor contends that this is a "single asset real estate" case and that the debtor must be held to the requirements of newly enacted Bankruptcy Code § 362(d)(3).

This Court has jurisdiction to determine this matter pursuant to 28 U.S.C. § 1334 and General Order No. 312–D of the United States District Court for the Southern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

## FACTS

The debtor, a limited partnership, owns undeveloped real property which generates no income. The property is subject to secured claims which exceed $4,000,000, but may be worth less than $4,000,000. The senior secured creditor has asked for relief from the automatic stay in part on the grounds that the property is "single asset real estate" and that the debtor has failed to comply with Bankruptcy Code § 362(d)(3).

## ANALYSIS

Section 218 of the Bankruptcy Reform Act of 1994 added two new sub-sections to the Bankruptcy Code to deal with the "single asset real estate" case. Section 101(51B) defines "single asset real estate" and section 362(d)(3) provides that the court shall grant relief from stay with respect to an act against "single asset real estate" unless the debtor has filed a plan or commenced interest payments within 90 days of the petition. It is undisputed that the debtor has failed to file a plan or commence payments within 90 days. The issue is whether the property is "single asset real estate."

Section 101(51B) defines "single asset real estate" as:

> real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto having aggregate non-contingent, liquidated secured debts in an amount no more than $4,000,000 . . . .

11 U.S.C. § 101(51B). The parties agree that the property is a "single property or project, other than residential real property with fewer than 4 residential units." The parties disagree as to whether section 101(51B) includes undeveloped or raw land that generates no income and, if so, whether the $4,000,000 limit on secured debts takes into account the value of the property; i.e., does one aggregate all asserted secured claims or only those which would be a "secured claim" under Code section 506(a)?

## 1. Must the Real Property Generate Income?

■ The definition of "single asset real estate" is limited to real property "which generates substantially all of the gross income of a debtor and on which no substantial business is being conducted by a debtor other than the business of operating the real property." Congress has obviously attempted to exclude certain debtors, but which ones? Section 101(51B) is clearly designed to exclude debtors that, although they own a single piece of property, have other income generating operations. The question is whether it is also meant to exclude debtors that own undeveloped land that generates no income. The language of the statute is, unfortunately, ambiguous.

Reading the first, or "gross income," clause to *include* raw land that generates no income is awkward but possible. If the debtor has no income, then substantially all of its income could be said to be generated by the property; i.e., substantially all of nothing is nothing. In addition to the awkwardness, this interpretation seems to render the second clause, "and on which no substantial business is being conducted by a debtor other than the business of operating the real property," superfluous. If the debtor has no "gross income", then the debtor is obviously not conducting "substantial business" on the property, or anywhere else for that matter. Conversely, a debtor operating a substantial business would not derive substantially all of its income from the property and would thus

be excluded under either clause. It is well settled that statutes are to be interpreted so as to avoid rendering any portion superfluous. *In re Pacific–Atlantic Trading Company,* 64 F.3d 1292, 1303 (9th Cir.1995); *In re Andrews,* 49 F.3d 1404, 1408 (9th Cir.1995). Thus, one might conclude that the two clauses are designed to exclude different types of property: the "gross income" clause to exclude property which generates no income and the "substantial business" clause to exclude restaurants, hotels, and the like. There are, however, problems with this interpretation.

■■■ Interpreting the statute to *exclude* raw land does not appear to serve the purpose of the statutory scheme. Sections 101(51B) and 362(d)(3) are designed to require debtors with "single asset real estate" to act in an expedited fashion. 11 U.S.C. § 362(d)(3); *In re Kkemko, Inc.,* 181 B.R. 47, 49 (Bankr.S.D.Ohio 1995); *In re Philmont Development Co.,* 181 B.R. 220, 223 (Bankr. E.D.Pa.1995). The consequence of not acting quickly is that the automatic stay may be lifted without further ado. *In re Kkemko,* 181 B.R. at 49. There is no apparent purpose for Congress to have excused debtors who own only raw land from this expedited program: If a debtor who owns an apartment complex is forced to act quickly why not a debtor who owns raw land? Legislative enactments are not to be construed as establishing statutory schemes that defeat the purpose of the statutes. *In re Pacific–Atlantic Trading Company,* 64 F.3d at 1303; *In re Jones,* 180 B.R. 575, 579 n. 3 (9th Cir. BAP 1995); *In re Luna,* 122 B.R. 575, 577 (9th Cir. BAP 1991); *In re Rau,* 113 B.R. 619, 622 (9th Cir. BAP 1990). Rather, appropriate statutory construction favors the more reasonable result. *In re Loretto Winery Ltd.,* 898 F.2d 715, 722 (9th Cir.1990). It is much more plausible that the "gross income" clause and the "substantial business" clause were both meant to exclude debtors who happen to own real property but who are also involved in income generating businesses in addition to ownership of the real property.

Since the language of section 101(51B) is unclear it is appropriate to look to the legislative history. *Pacific–Atlantic Trading Company,* 64 F.3d at 1299. With the Reform Act, Congress provided a "Section–By–Section Description" in which it paraphrased the definition of "single asset real estate":

*Section 218. Single asset real estate*

This section will add a new definition to the Code for "single asset real estate," meaning real property ... which generates substantially all of the gross income of the debtor and has aggregate noncontingent, liquidated secured debts in an amount up to $4 million.

H.R.Rep. No. 835, 103rd Cong., 2nd Sess. (1994), U.S.Code Cong. & Admin.News 1994 p. 3340 p. 10768. In describing the scope of "single asset real estate" Congress apparently found it unnecessary to use the "substantial business" clause. If the two clauses were meant to exclude different types of debtor, then the "substantial business" clause would have had to have been included in the paraphrase. Since it was not, one might conclude that both clauses were meant to exclude debtors with income generating operations beyond the real property. Other legislative history supports this conclusion.

Section 218 of the Reform Act can be traced back to section 211 of S. 1985 which provided:

'single asset real estate' means real property, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto ...

S. 1985, 102nd Cong., 2d Sess. § 211(a)(2) (1992); Roger M. Whelan and William W. Senft, *The Legislative Response to Single Asset Real Estate Bankruptcies: Critical Analysis and Some Suggestions,* 1 Am. Bankr.L.Rev. 157 (1993). Senate Report 279 explained that "single asset real estate" was to be "limited to investment property of the debtor." S.Rep. No. 168, 103rd Cong., 1st Sess. October 28, 1993, U.S.Code Cong. & Admin.News 1994 p. 3340; S.Rep. No. 279, 102nd Cong., 2nd Sess. May 7, 1992; *The*

*Legislative Response to Single Asset Real Estate Bankruptcies,* 1 Am.Bankr.L.Rev. at 158. Surely if any property is considered "investment property," raw, undeveloped land would be.

When faced with the task of interpreting "single asset real estate" the court in *In re Philmont Development,* found that the legislative history which accompanied the Reform Act was not particularly "illuminating." 181 B.R. at 223. The court noted, however, that:

> The terms single asset case, or single asset real estate case, are well-known and often used colloquialisms which essentially refer to real estate entities attempting to cling to ownership of real property in a depressed market ... rather than businesses involving manufacturing, sales or services.... The drafters of sections of (sic) 101(51B) and 362(d)(3) were aware of the colloquial use of the phrase "single asset real estate," and the Court believes that their intention in using that phrase grew out of its previous colloquial and common usage.

*Id.* (Citations omitted.) It is well settled that where Congress uses terms that have accumulated settled meaning under the common law, a court should infer, unless the statute otherwise dictates, that Congress meant to incorporate the established meaning of these terms. *Field v. Mans,* ___ U.S. ___, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). In *In re Kkemko,* the court also looked to the history of the usage of the term "single asset real estate" and stated, albeit in dicta, that the definition in section 101(51B) did include raw land.

This Court has reviewed many of the cases that used the phrase "single asset real estate," and discovered several in which the phrase was applied to raw, undeveloped land: *In re Humble Place Joint Venture,* 936 F.2d 814 (5th Cir.1991) (partially developed land but referred to by the bankruptcy court as "raw land" generating no income); *In re Nattchase Associates Limited Partnership,* 178 B.R. 409 (Bankr.E.D.Va.1994); *In re Lake Ridge Associates,* 169 B.R. 576 (Bankr. E.D.Va.1994); *In re Clinton Fields, Inc.,* 168 B.R. 265 (Bankr.M.D.Ga.1994); and *In re Monica Road Associates,* 147 B.R. 385 (Bankr.E.D.Va.1992).

If Congress intended to exclude raw land from the definition they would have done so specifically or at least explained in the comments that the definition was meant to exclude raw land. Without such an express exclusion this court does not believe that Congress meant for "single asset real estate" to mean less than it did before the sections were enacted. Although it requires a bit of a tortured reading, based upon the statutory purpose of the new sections, the limited legislative history, the usage of the term "single asset real estate" in prior case law and the fact that excluding raw land would simply not make sense, this Court concludes that "single asset real estate" includes undeveloped real property which generates no income.

## 2. Should the Calculation of the Amount of the Secured Debt Take Into Consideration the Value of the Property?

■ Section 101(51B) is limited to debtors with "aggregate noncontingent, liquidated secured debts in an amount no more than $4,000,000." Debtors with secured debts exceeding $4,000,000 are excused from compliance with the expedited schedule of section 362(d)(3). Presumably Congress decided that cases of a certain magnitude ought to be afforded more than 90 days to file a plan or begin making interest payments. The Debtor has scheduled secured claims in excess of $4,000,000 and argues that it ought to be excused. The secured creditor argues that secured claims cannot exceed the value of the collateral and since the property is worth less than $4,000,000 the secured claims cannot exceed $4,000,000. The Debtor, argues the secured creditor, is, therefore, required to comply with section 362(d)(3) or relief must be granted.

■ The $4,000,000 limitation is not explained in the legislative history, nor is there prior case law from which it was derived. The determination of whether the secured claims exceed the cap must be made in a way which is consistent with other provisions of the Code: statutory construction is a holistic endeavor. *In re Mitchell,* 977 F.2d 1318,

1320 (9th Cir.1992); *In re McSheridan,* 184 B.R. 91, 101 n. 11 (9th Cir BAP 1995).

Bankruptcy Code section 506(a) provides that the allowed claim of a creditor holding a lien on property of the estate is a secured claim:

> to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

11 U.S.C. § 506(a). Congress explained that the effect of section 506(a) is that an undersecured creditor "has a secured claim to the extent of the value of his collateral; and he has an unsecured claim for the balance of his claim." S.Rept. No. 95–989 to accompany S. 2266, 95th Cong., 2d Sess. (1978), U.S.Code Cong. & Admin.News 1978 p. 5787, 5854 p. 68. Looking only to this section one might conclude that secured claims are limited to the value of the collateral. However, secured claim is given a different meaning in other sections.

In *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), the court determined that "allowed secured claim" as used in section 506(d) means the full allowed amount of the creditor's claim regardless of the value of the collateral.

■ Similarly, in section 1129(b)(2) Congress clearly distinguished between the amount of a secured claim and the value of the creditor's interest in collateral. Section 1129(b)(2)(A)(i), which defines fair and equitable treatment with respect to a class of secured claims, requires at subsection (II) that:

> each holder of a [secured] claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property. . . .

11 U.S.C. § 1129(b)(2)(A)(i)(II). Congress provided an example of the application of section 1129(b)(2)(A)(i)(II):

> For example, if a creditor loaned $15,000,-000 to a debtor secured by real property worth $18,000,000 and the value of the real property had dropped to $12,000,000 by the date when the debtor commenced a proceeding under chapter 11, the plan could be confirmed notwithstanding the dissent of the creditor as long as the lien remains on the collateral to secure a $15,-000,000 debt, the face amount of present or extended payments to be made to the creditor under the plan is at least $15,000,-000, and the present value of the present or deferred payments is not less than $12,-000,000.

124 Cong.Rec.H. 11102, H 11105, H 11114, H 11115 (Sept. 28, 1978). If Congress meant for the amount of a secured claim to be limited to the value of the collateral then there were would be no difference between the first reference "the allowed amount of such claim" and the second reference "the value of such holder's interest in the estate's interest in such property." The first requirement would be superfluous because a string of payments with a certain present value will always total at least the amount of such value.[1] As set forth above, statutes are to be interpreted, where possible, to avoid superfluity. *In re Pacific–Atlantic Trading Company,* 64 F.3d at 1303.

The first requirement in section 1129(b)(2)(A)(i)(II) is not, however, superfluous because a secured creditor, in most instances, is allowed to elect to have his entire claim treated as secured notwithstanding the value of the property. 11 U.S.C. § 1111(b). If such an election is made, then notwithstanding section 506(a), such claim is a se-

---

1. For example if present value of several payments made over ten years is $1,000 then the total of all the payments will always be greater than $1,000. Money received tomorrow is always worth less than the same amount received today. Theoretically, this would not be true in times of *deflation* where a bank would say "we're not going to accept your money today and pay you the same amount tomorrow because tomorrow the money will be worth more than it is today." In such case, and only such case, the total of the payments would be greater than the present value. This Court is, however, aware of no time in history when such has been the case and does not anticipate deflation in the foreseeable future.

cured claim to the extent that such claim is allowed. 11 U.S.C. § 1111(b)(2).

 The clause "aggregate non-contingent, liquidated secured debts in an amount no more than $4,000,000," is, then, open to at least two interpretations both of which find support elsewhere in the Code. Given this ambiguity and lack of legislative history, the determination turns on which of the viable possibilities best gives effect to the purpose of the statute. *In re Loretto Winery Ltd.,* 898 F.2d at 722. One purpose of the statutory scheme of sections 101(51B) and 362(d) is to place these "single asset real estate" cases on a sort of a "fast-track" program. *In re Philmont Development,* 181 B.R. at 223. Another purpose is to afford secured creditors a relatively easy way to obtain relief from stay: all they have to do is show that the debtor has failed to perform under 362(d)(3) rather than engaging an appraiser and fighting over value. *In re Kkemko, Inc.,* 181 B.R. at 49. If we interpret section 101(51B) to limit the amount of secured claims to the value of the property then we are inviting valuation disputes at an early stage of the case. To require such a valuation would thwart the expedient resolution of the case and introduce unnecessary costs to a case that may go quietly away in 90 days.

Furthermore, limiting the claims to the value of the property could result in a debtor who in good faith believes his property to be worth more than $4,000,000 inadvertently missing the 90–day deadline. One can imagine a case in which a debtor schedules secured claims of more than $4,000,000 and real property worth more than $4,000,000. A secured creditor moves for relief from stay for cause such as lack of adequate protection. A valuation, decided after 90 days after the commencement of the case, discloses that the value of the property is actually less than $4,000,000. Whether or not the creditor was adequately protected the court would be compelled to lift the stay since the debtor did not comply, because he did not think he had to, with section 362(d).

The clear intent of Congress is to move these single asset cases in and, if appropriate, out of bankruptcy without wasting time and resources. The interpretation which best suits this purpose is that "aggregate non-contingent, liquidated secured debts in an amount no more than $4,000,000," refers to the total amount of all secured claims without regard to the value of the property.

### CONCLUSION

For the reasons set forth above this Court concludes that the definition of "single asset real estate" in section 101(51B) includes undeveloped real property which generates no income, and that the calculation of the amount of "aggregate non-contingent, liquidated secured debts" is to be based upon the full amount of asserted secured claims without respect to the value of the property.

Accordingly, the secured creditor's motion for relief from stay, to the extent it is based on the asserted failure of the debtor to comply with section 362(d)(3), is denied.

IT IS SO ORDERED.