**In re CBJ DEVELOPMENT, INC., Debtor.**

**Albert J. CENTOFANTE and Mary J. Centofante, Co–Trustees of the Centofante Family Trust Dated 7/27/82, Appellants,**

v.

**CBJ DEVELOPMENT, INC., Appellee.**

**BAP No. CC–96–1031–HAlJ.**
**Bankruptcy No. ND 95–13342 RR.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Submitted July 24, 1996.

Decided Sept. 17, 1996.

Before: HAGAN, ALLEY[1], and JONES, Bankruptcy Judges.

## OPINION

HAGAN, Bankruptcy Judge:

Appellants, Albert J. Centofante and Mary J. Centofante as trustees of the Centofante Family Trust ("Centofante"), appeal the bankruptcy court's order denying their motion for relief from the § 362[2] automatic stay to proceed against property owned by chapter 11 debtor, CBJ Development, Inc. (the "Debtor"). WE AFFIRM.

## FACTUAL BACKGROUND

The Debtor's primary asset consists of a 63 room hotel in Vandenburg Village, California (the "Hotel"). All of the Debtor's income is generated from the rental of hotel rooms and the operation of the bar, restaurant, and gift shop located on the premises.

The Hotel was previously owned by Mayfield Holdings Ltd. ("Mayfield"). On August 4, 1992, Mayfield executed a note secured by a deed of trust against the Hotel in favor of Centofante. The Centofante deed of trust was duly recorded in Santa Barbara County, California on August 12, 1992.

Mayfield sold the Hotel to the Hill Family Trust ("Hill") in exchange for a promissory note and deed of trust secured by the Hotel. The Mayfield deed of trust was recorded on November 12, 1992. Hill did not assume the Centofante deed of trust, but took the Hotel subject thereto.

---

1. Hon. Frank R. Alley III, Bankruptcy Judge for the District of Oregon, sitting by designation.

2. Unless otherwise noted, all references herein to "section," "§" or "chapter" refer to the sections or chapters of the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

Mayfield assigned the Mayfield deed of trust to the Debtor on August 5, 1994. Thereafter, the Hills defaulted on the Mayfield deed of trust and the Debtor foreclosed. The Debtor completed its foreclosure and obtained title to the Hotel on June 13, 1995. The Debtor's title to the Hotel is subject to the Centofante deed of trust.

At the time the Debtor foreclosed on the Hotel, the Hills were also in default on the Centofante deed of trust. As the Debtor did not bring the Centofante note current, on July 14, 1995, Centofante began foreclosure proceedings. The foreclosure sale was originally scheduled for August 4, 1995, but was rescheduled for October 6, 1995. However, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 on August 3, 1995.

At the time the petition was filed, the Hotel's gift shop, restaurant, and bar were closed for renovations which the Debtor had began shortly after obtaining possession of the Hotel.[3] The Debtor did not have a liqueur license. However, the Debtor was operating the Hotel.

Pursuant to §§ 362(d)(2) and (3), Centofante filed a motion for relief from the § 362 automatic stay on August 14, 1995. By the time Centofante's motion was heard, the Debtor's gift shop was open and the restaurant and the bar were about to reopen.

At the time the motion for relief was filed, the amount owing on the Centofante's note and deed of trust was approximately $1,200,000.00 including principal, interest, late fees and penalties, foreclosure costs, and attorney fees. The Centofante's appraiser, Richard Martin, testified that the Hotel had a fair market value of $1,500,000.00. The Debtor submitted the appraisal of Billie H. Tiller. Mr. Tiller estimated the Hotel had a fair market value of $2,600,000.00.

After hearing the testimony of Centofante's appraiser, the bankruptcy court concluded there was insufficient evidence as to the fair market value of the property to grant relief from the stay under § 362(d)(2). The bankruptcy court denied Centofante's motion for relief under § 362(d)(3) on the grounds the Hotel was not "single asset real estate."

Centofante appealed. The Debtor does not appear on appeal.

## SUBJECT MATTER JURISDICTION AND STANDARD OF REVIEW

An order denying a motion for relief from the automatic stay is a final appealable order. *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir.1990).

The bankruptcy court's conclusions of law are reviewed de novo. The bankruptcy court's findings of fact are reviewed for clear error. Orders relief denying from the automatic stay are also reviewed for abuse of discretion. *In re Tucson Estates*, 912 F.2d at 1166; *Montclair Retail Center, L.P. v. Bank of the West (In re Montclair Retail Center, L.P.)*, 177 B.R. 663, 664 (9th Cir. BAP 1995).

## DISCUSSION

Centofante contends the bankruptcy court erred by denying its motion for relief from the automatic stay under both § 362(d)(2) and § 362(d)(3).[4]

**3.** The Debtor's investors, not the Debtor financed the renovations.

**4.** Section 362(d) provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
(2) with respect to a stay of an act against property under subsection (a) of this section, if—
(A) the debtor does not have an equity in the property; and
(B) such property is not necessary to an effective reorganization; or
(3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90–day period)—

**470**

### A. *Single Asset Real Estate.*

The Bankruptcy Reform Act of 1994 (the "1994 BRA")[5] added § 362(d)(3) to the Bankruptcy Code. Code § 362(d)(3) requires that the courts grant relief from the § 362 automatic stay for secured creditors to proceed against "single asset real estate" unless: (1) within 90 days of the date the petition is filed the debtor either files a chapter 11 plan "that has a reasonable possibility of being confirmed within a reasonable time;" or (2) the debtor has begun making regular monthly payments to each creditor whose claim is secured by the "single asset real estate." 11 U.S.C. § 362(d)(3). The Debtor neither filed a plan within the 90–day period, nor commenced making payments to Centofante. Accordingly, if the Hotel is "single asset real estate," Centofante is entitled to relief from the automatic stay. *Nations-Bank, N.A. v. LDN Corp. (In re LDN Corp.),* 191 B.R. 320, 327 (Bankr.E.D.Va.1996) ("relief under § 362(d)(3) is mandatory where its provisions are not strictly complied with.")

"Single asset real estate" is:

real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto having aggregate non-contingent, liquidated secured debts in an amount no more than $4,000,000[.]

11 U.S.C. § 101(51B).

The Debtor contends that the operation of its Hotel is the operation of a business, "other than the business of operating the real property." The bankruptcy court rejected the contention the operation of a hotel is more than mere operation of property, but concluded in reliance on *In re Kkemko, Inc.,* 181 B.R. 47 (Bankr.S.D.Ohio 1995), that the

bar, gift shop, and restaurant constituted "substantial business ... other than the business of operating the real property and the activities incidental thereto." Accordingly, the bankruptcy court denied Centofante's motion for relief from the automatic stay under § 362(d)(3).

### 1. *Is Operating a Hotel "Operating the Property"?*

■ It is not clear what constitutes merely "operating the real property" and what constitutes other business activity. However, some activity is clearly mere operation of property. For example, in *Kkemko,* the court concluded that because residential property with fewer than four units is specifically excluded from section § 101(51B), other residential property including apartment buildings must be included. *Kkemko,* 181 B.R. at 50. Thus, residential rental income is income from the operation of the property. *Id.* Similarly, the *Kkemko* court concluded that income from the rental of office space is also income from the operation of the property, not income from other business activity. *Id.*

However, the operation of the average hotel requires daily maid service, linen service, and many other services not provided by an apartment building owner. *Cf. In re LDN Corp.,* 191 B.R. 320 (parties agreed motel was single asset real estate). The maintenance services provided by an apartment or office building are minimal and primarily limited to common areas. On the other hand, like that of an apartment complex, the basic service provided by a motel is the rental of rooms. Thus, the question remains whether operation of a hotel is more than mere operation of property under § 101(51B).

There is little authority concerning either the definition of "single asset real estate" under § 101(51B) or the application of § 363(d)(3). The congressional notes and re-

---

(A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
(B) the debtor has commenced monthly payments to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien), which payments are in

an amount equal to interest at a current fair market rate on the value of the creditor's interest in the real estate.
11 U.S.C. § 362(d).

5. P.L. 103–394 (H.R.5119), October 22, 1994, § 218.

ports accompanying the 1994 BRA § 218 do not indicate what Congress meant by operation of the real property. Consequently, those courts construing these new Code sections have turned to earlier case law granting dismissal or relief from the § 362 automatic stay in case law defined single asset real estate cases. *See In re Oceanside Mission Associates,* 192 B.R. 232 (Bankr.S.D.Cal. 1996) (holding that raw land was single asset real estate); *In re Kkemko, Inc.,* 181 B.R. 47; *In re Philmont Development Co.,* 181 B.R. 220, 223–224 (Bankr.E.D.Pa.1995) (applying § 362(d)(3) to apartment buildings).

The *Philmont* court justified its reliance on pre–1994 BRA case law as follows:

> The terms single asset case, or single asset real estate case, are well-known and often used colloquialisms which essentially refer to real estate entities attempting to cling to ownership of real property in a depressed market ... rather than businesses involving manufacturing, sales or services. *See In re Mayer Pollock Steel Corp.,* 174 B.R. 414, 422–23 (Bankr.E.D.Pa.1994). The drafters of sections of 101(51B) and 362(d)(3) were aware of the colloquial use of the phrase "single asset real estate," and the Court believes that their intention in using that phrase grew out of its previous colloquial and common usage.

*In re Philmont,* 181 B.R. at 223.

. Similarly, the *Oceanside* court, cited *Field v. Mans,* —— U.S. ——, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) for the proposition that: where Congress uses terms that have accumulated settled meaning under the common law, a court should infer, unless the statute otherwise dictates, that Congress meant to incorporate the established meaning of these terms.

*In re Oceanside,* 192 B.R. at 236.

Therefore, to the extent that either § 101(51B) or § 362(d)(3) is ambiguous, we will look to pre–1994 BRA single asset real estate cases for guidance. The majority of pre–1994 BRA cases considering the issue have declined to dismiss the debtor's chapter 11 proceeding, or to grant relief from the automatic stay merely because the debtor's sole asset is a currently operating hotel or motel unless there were other aggravating factors. These cases consider hotels on a case by case basis, emphasizing the number of persons employed by the hotel and the services it provides.[6] This analysis mirrors the treatment of single asset cases generally in that the courts consider not only whether the debtor has only one asset but also whether the debtor has employees other than its principals. *Stolrow v. Stolrow's Inc. (In re Stolrow's Inc.),* 84 B.R. 167, 171 (9th Cir. BAP 1988) (*citing Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.),* 779 F.2d 1068, 1072–1073 (5th Cir.1986)).

The legislative history concerning the unpassed precursor to § 362(d)(3) supports the conclusion that "single asset real estate" does not necessarily include hotels. Senate Bill 2266 would have excluded single asset real estate from the property considered necessary for an effective reorganization under § 362(d). The unpassed Senate Bill provided:

**6.** *See Humble Place Joint Venture v. Fory (In re Humble Place Joint Venture),* 936 F.2d 814, 818 (5th Cir.1991) (noting that a one asset venture which is operating a business like a ranch or hotel, is usually allowed to proceed under chapter 11); *In re Dunes Hotel Associates,* 188 B.R. 162 (Bankr.D.S.C.1995) (where debtor's only significant asset was an operating hotel which produced significant income, the court denied the secured creditor's motion to dismiss); *In re Newark Airport/Hotel Limited Partnership,* 156 B.R. 444 (Bankr.D.N.J.1993) (undersecured creditor's motion for relief from stay to proceed against hotel was denied—the court emphasized that the debtor employed a substantial number of people), *aff'd sub nom FGH Realty Corp. v. Newark Airport/Hotel Limited Partnership,* 155 B.R. 93 (D.N.J.1993); *In re North Redington Beach Associates, Ltd.,* 91 B.R. 166 (Bankr.M.D.Fla.1988) (the mere fact that the debtor filed on the eve of foreclosure of its only asset was insufficient to support a finding of bad faith where the debtor's hotel business was ongoing with more than 60 employees). *Cf. Jones v. Bank of Santa Fe (In re Courtesy Inns, Ltd, Inc.),* 40 F.3d 1084, 1088 (10th Cir.1994) (upholding award of sanctions against debtor's counsel in a single asset hotel case where the hotel was significantly under water); *In re Dale Mabry Properties, Ltd.,* 149 B.R. 209 (M.D.Fla.1992) (where debtor had been in default for over four years on the mortgage encumbering its hotel, the district court upheld the bankruptcy court's order dismissing the debtor's petition for bad faith).

"property is not necessary to an effective reorganization of the debtor if it is real property on which no business is being conducted by the debtor *other than the business of operating the real property and activities incident thereto....*"

*In re Fields,* 127 B.R. 150, 152 n. 1 (Bankr. W.D.Tex.1991) (emphasis added) (*quoting* 11 U.S.C. § 362(d) (proposed), S.2266, 95th Cong., 2d Sess., as reported by the Senate Judiciary Committee and the Senate Finance Committee (1978)).

In the Senate Report accompanying Senate Bill 2266, the committee explained:

"The intent of this exception is to reach the single-asset apartment type cases which involve primarily tax-shelter investments and for which the bankruptcy laws have provided a too facile method to relay [sic] conditions, but not the operating shopping center and hotel cases where attempts at reorganization should be permitted."

*In re Fields,* 127 B.R. at 153 (*quoting* Report of the Committee on the Judiciary, United States Senate (to accompany S.2266), S.Rep. No. 989, 95th Cong., 2d Sess. 53 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5839).

 Although not directly relevant to § 362(d)(3), the 1978 Senate Committee Report demonstrates that at least some members of Congress understand the term "operating the real property" to mean something less than operation of a full service hotel.

Thus, although merely calling a building a hotel is insufficient to remove it from the definition of "single asset real estate," the operation of a full service hotel is more than the mere operation of property. However, where the debtor's business is more akin to apartment rental, merely calling the business a hotel is insufficient to remove the building from the definition of "single asset real estate."[7]

A 63 room full service hotel such as the Debtor's must employ a substantial number of people. Rooms must be cleaned, sheets and towels laundered, phone and other services provided. Thus, in this case the operation of the Hotel requires substantially more day to day activity than does the operation of an apartment complex. Accordingly, the operation of the Hotel is sufficiently active in nature to constitute a business other than the mere operation of property. We conclude that the Hotel is not "single asset real estate." To the extent that the bankruptcy court held that the operation of a hotel can never be a business "other than the business of operating the property," the bankruptcy court's decision was in error.

### 2. *Substantial Other Business Activity.*

 The bankruptcy court also concluded that the Hotel is not "single asset real estate." The bankruptcy court based its decision on the conclusion that the gift shop, restaurant, and bar located on the property constitute substantial other business. We agree.

In *Kkemko,* the court considered whether the various nonrental activities which the debtor engaged in at its marina were sufficient to remove the marina from the "single asset real estate" classification. In addition to providing moorage, Kkemko sold fuel and other provisions to boaters, provided storage of boats, and offered boat winterizing and boat repair. *Kkemko,* 181 B.R. at 50–51. Based upon these non-rental activities the court concluded the marina did not come within the definition of "single asset real estate." *Id.*

 Under the *Kkemko* court's analysis, the gift shop, restaurant, bar, and the bus tours launched from the Hotel parking lot

---

7. In *Kkemko,* the court considered a similar borderline activity, *i.e.* the operation of a marina. The court noted that in common usage the term single asset real estate referred to raw land or buildings which were intended to be income producing. *Id.,* 181 B.R. at 51. It then held that a marina is not within the traditional usage of the term single asset real estate. However, pursuant to the *Kkemko* court's reasoning, no hotel would ever be "single asset real estate." We disagree. The pre–1994 BRA case law clearly indicates that whether a hotel is "single asset real estate" depends upon the amount of services provided by and the number of persons employed by the hotel in question.

are all business other than the business of operating the property. However, with the exception of the gift shop (which was re-opened after the petition was filed), all of the Debtor's other business were closed at the time the motion was heard. Similarly, some of the activities cited by the *Kkemko* court, such as the sale of gas, were also not operating at the time the order denying relief from the stay was entered. *Kkemko,* 181 B.R. at 51.

The use of the present tense by Congress in § 101(51B) suggests that only current activities may be considered in determining whether the debtor is conducting substantial business activities other than the operation of the property. Any other conclusion would allow all debtors with unrented commercial space to evade § 362(d)(3) by simply declaring an intention to start a business.

Nevertheless, in this case, although the Debtor is not currently operating the restaurant and bar, the Debtor operated these businesses shortly before filing its petition for relief. In addition, the restaurant and bar had been previously operating on the property prior to the Debtor's acquiring title to the Hotel. The business are only closed for renovations which are being carried out promptly and the Debtor's investors have put a substantial amount of money into the renovations. Under these circumstances, we conclude that the restaurant and bar may be considered in determining whether there was substantial other business activity on the property. Accordingly, we conclude that restaurant, bar and gift shop constitute significant other business, sufficient to remove the Hotel from the definition of "single asset real estate." [8]

## B. *Property Not Necessary for an Effective Reorganization.*

■ The bankruptcy court found, and Centofante does not protest on appeal that Centofante failed to prove the Debtor lacked equity in the property. Relief under § 362(d)(2) requires both: (1) that the debtor have no equity in the property; and (2) that

the property is not necessary for a successful reorganization. 11 U.S.C. § 362(d)(2). Accordingly, the bankruptcy court concluded that Centofante is not entitled to relief under § 362(d)(2).

Centofante now attempts to argue that the unlikelihood of the Debtor presenting a confirmable plan is in itself grounds for granting relief from the automatic stay. That a Debtor is unable to propose a feasible plan, may be grounds for relief from the automatic stay for "cause" under § 362(d)(1). *See United Savings Assoc. of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1975). However, at the hearings on the motion for relief, Centofante only asked for relief under § 362(d)(2) and § 362(d)(3).

The bankruptcy court ruled on Centofante's motion immediately following Centofante's case in chief. Centofante did not contend at that time that it should have relief from the automatic stay unless the Debtor could demonstrate that it could propose a feasible plan. Instead, Centofante's attorney offered to submit the order denying his client's motion on the "two grounds," *i.e.* failure to show no equity under § 362(d)(2) and failure to prove the Hotel is "single asset real estate" under § 362(d)(3). Nor did Centofante present any evidence as to whether it was possible for the Debtor to obtain confirmation of a plan. Instead, Centofante relied solely on evidence as to the value of the property, and legal argument as to whether Hotel is "single asset real estate."

As this issue was not properly raised below, we will not consider it on appeal. It should be noted, however, that this ruling is not intended to and should not preclude Centofante from raising this issue below in the event the Debtor has not yet obtained confirmation of a chapter 11 plan.

## CONCLUSION

We affirm the bankruptcy court's denial of Centofante's motion for relief from automatic stay pursuant to § 362(d) on the grounds

---

8. Centofante has not raised and we do not address whether Centofante may obtain dismissal, conversion or other relief based upon the pre-

1994 BRA case law concerning single asset real estate.

**474**

that: (1) operating the Hotel is business other than operating property under § 101(51B); and, (2) the bar, restaurant, and other businesses operated by the Debtor are sufficient "other business," to remove the Hotel from the definition of "single asset real estate."

We affirm the bankruptcy court's denial of Centofante's motion for relief under § 362(d)(2) because Centofante failed to show that the Debtor has no equity in the Hotel.