**In re David L. RANSOM, Jr. d/b/a D & R Press, Debtor.**

**Bankruptcy No. 94 B 14976.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Aug. 25, 1995.

James Truax, Chicago, Illinois, for Debtor.

Joel R. Nathan, Assistant United States Attorney, Chicago, Illinois, for I.R.S.

## MEMORANDUM OPINION [1]

SUSAN PIERSON SONDERBY, Bankruptcy Judge.

### BACKGROUND

On July 27, 1994, David R. Ransom, Jr. d/b/a D & R Press ("Debtor") filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code. D & R Press is a small commercial printing company in Chicago, Illinois. The Debtor is current with the monthly operating reports and with the quarterly fees payable to the United States Trustee. Since the bankruptcy filing, the Debtor's operating profits are approximately $25,000. Debtor's property is fully encumbered by consensual liens and the tax liens of the Internal Revenue Service ("IRS"). The IRS filed a proof of claim in the amount of $361,140.22. The Debtor has not objected to the IRS' claim.

On May 9, 1995, the Debtor filed a plan of reorganization providing that the Debtor will file an Offer of Settlement of his debt with the IRS. The plan provides that "the compromised amount or the actual amount shall be paid, in deferred monthly cash payments, over a period of seventy-two (72) months after [sic] the date of assessment of such claim, of a value, as of the [sic] Effective Date of the Plan." On March 22, 1995, the IRS filed a motion to convert or dismiss the Debtor's case pursuant to 11 U.S.C. § 1112(b)(2) of the Bankruptcy Code.[2] Subsequently, the Debtor filed a response and the IRS filed a reply. On May 9, 1995, the Court held an evidentiary hearing.

### ANALYSIS

Section 1112(b)(2) states that a court may dismiss a case or convert a case to Chapter 7 for cause, including the "inability to effectuate a plan." 11 U.S.C. § 1112(b)(2).

---

1. Edited after issuance for purposes of publication.

2. All statutory citations are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

The Seventh Circuit has directed lower courts to dismiss or convert a case pursuant to § 1112(b)(2), "'if the court determines that it is unreasonable to expect that a plan can be confirmed.'" *In re Woodbrook Assoc.*, 19 F.3d 312, 316 (7th Cir.1994) (citing 5 Conrad K. Cyr et al., *Collier on Bankruptcy* ¶ 1112.03[2][d][ii], at 1112–19 to 1112–20 (15th ed. 1993)). Where there is a reasonable prospect of successful rehabilitation, a motion under § 1112(b) must be denied. *In re Garland Corp.*, 6 B.R. 456, 460 (1st Cir. BAP 1980). The burden is on the movant to establish by a preponderance of the evidence the cause for dismissal. *Woodbrook*, 19 F.3d at 317.

Pursuant to § 1141(d)(2), the confirmation of a plan does not discharge an individual debtor from any debt excepted from discharge under § 523. The IRS contends that since the Debtor cannot bind the IRS to his plan, the Debtor will be unable to effectuate a plan of reorganization. The IRS' argument fails because the IRS has not proven that it has any nondischargeable tax claims. Not all claims for taxes are nondischargeable. *See* 11 U.S.C. § 523(a). The Federal Rules of Bankruptcy Procedure mandate that an adversary proceeding must be filed in order to determine the dischargeability of a debt. Fed.R.Bankr.P. 7001(6). Simply because this is a Chapter 11 proceeding does not obviate the need for a determination that the IRS' claim is nondischargeable. In a Chapter 11 case "a debt deemed to be nondischargeable under 11 U.S.C. § 523(a) will not be discharged. 11 U.S.C. § 1141(d)(2). In this regard, a complaint needs to be filed, just as in a Chapter 7." 2 Thomas J. Salerno et al., *Advanced Chapter 11 Bankruptcy Practice* § 13.5, at 13–6 (1994); *see also Matter of C & P Gray Farms, Inc.*, 70 B.R. 704, 711 (Bankr.W.D.Mo.1987) (noting that the court has routinely heard and determined nondischargeability actions in Chapter 11 cases).

The IRS cites numerous cases for the proposition that creditors cannot be bound by a Chapter 11 plan which prevented the creditor from executing or collecting on the nondischargeable debts. *De Paolo v. U.S. (In re DePaolo )*, 45 F.3d 373 (10th Cir.1995); *In re Amigoni*, 109 B.R. 341 (Bankr.N.D.Ill. 1989); *In re Howell*, 84 B.R. 834 (Bankr.

M.D.Fla.1988). The Court does not disagree with that proposition. However, the status of the debts as being nondischargeable was clear in all those cases. In *Howell*, the Debtor sought to cram down its plan which precluded a creditor holding a nondischargeable claim from pursuing the claim post-confirmation. 84 B.R. at 835. In that case, the creditor initiated an adversary proceeding pursuant to § 523 to determine whether the debt was nondischargeable. *Id.* After a trial on the merits, the Court entered a judgment finding that the debts were nondischargeable. *Id.* In *Amigoni*, the Chapter 11 debtors proposed plans which sought to restrict the rights of parties who were holding nondischargeable claims. 109 B.R. at 342–43. However, the debtors specifically conceded that the debt in question was nondischargeable. *Id.* at 344. Similarly, in *DePaolo*, the parties did not dispute that the taxes were nondischargeable. 45 F.3d at 375. *See also Fein v. U.S. (In re Fein )*, 22 F.3d 631 (5th Cir.1994) (debtor instituted an adversary proceeding to determine whether income tax deficiencies had been discharged).

In this case, unlike *Howell, Amigoni,* or *DePaolo*, there is a question as to whether the IRS' claim is nondischargeable. The court cannot determine from the papers filed and the testimony given which tax claims are nondischargeable. Looking at the evidence presented at the hearing, the IRS has not proven by a preponderance of the evidence that the debts are nondischargeable. The Debtor did not concede that the debts were nondischargeable, nor is the Court convinced of that fact. A separate adversary proceeding must be instituted so that the Debtor can specifically admit or deny which tax claims it considers nondischargeable.

The Tenth Circuit did not require the filing of an adversary complaint to determine that the IRS' claim was nondischargeable. *Grynberg v. U.S. (In re Grynberg )*, 986 F.2d 367 (10th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 57, 126 L.Ed.2d 27 (1993). However, in *Grynberg,* the taxes at issue were gift taxes which the Court found easily fit into the nondischargeable category. *Id.* at 369. That is not so in this case. In this case, the IRS' claim consisted of withholding taxes since 1989, federal unemployment taxes since 1989, income taxes since 1987, and employ-

ment taxes since 1987, as well as respective interest and penalty assessments for some of those taxes.

The IRS contends that the Debtor has not objected to its claim. Pursuant to § 502, a proof of claim is allowed unless a party-in-interest objects. At this point in time, the IRS' claim is allowable. However, simply because a claim is allowed does not make it nondischargeable. Obtaining a discharge in a Chapter 11 case, is one of the primary purposes for a debtor to file for bankruptcy. Consequently, which claims of the IRS are deemed nondischargeable is sufficiently serious, and in the case of tax debt, sufficiently complex, to warrant the filing of a complaint. Once the question is answered as to which debts are nondischargeable, the Court can assess the arguments of the IRS as to whether the Debtor can successfully rehabilitate.

Next, the IRS contends that the Debtor's operating profits are insufficient to pay the IRS prior to the time period required under § 1129(a)(9)(C). Section 1129(a)(9)(C) requires the payment of a § 507(a)(8) tax claim on a deferred basis over a period not exceeding six years after the date of assessment of such claim. The IRS argues that the Debtor will be unable to make certain priority tax assessments which will reach their sixth anniversary in August and September 1995. Consequently, the IRS argues that the Debtor's inability to effectuate a plan is grounds for conversion or dismissal under § 1112(b)(2). That argument is purely speculative.

At the evidentiary hearing, the Court received testimony from David Ransom, the owner of D & R Press, and Darrell Ransom, the manager of D & R Press. The Court found the testimony of the two brothers to be forthright and sincere. From the testimony given, it is clear to this Court that the Debtor's business is in the process of successfully reorganizing. The Debtor has obtained numerous new accounts including Montgomery Ward, FNMA, and MCI which have already brought the Debtor substantial profits. The Debtor's landlord has recently remodeled the business premises of D & R Press which will further entice new clients. The Debtor has also changed his way of doing business by requiring a down payment from clients requesting printing services.

The Debtor has also made fundamental changes in the way he runs his business. More productive workers have been hired, and less productive workers have been terminated. These changes have been successful. In February and March, the Debtor's operating profits were in excess of $9,000 each month, the debtor in possession account contained $31,000, and the firm accounts receivable were in excess of $68,000. The profits, as projected by Darrell Ransom, show a substantial likelihood of continuing. Further, the Court is impressed with Darrell Ransom's enthusiastic attitude and drive to see D & R Press succeed. Both the owner and manager of D & R Press "appear to have the business acumen and sufficient resilience to rebound and breathe life into the [company]." *In re Burnside, Lee & Harris Diamond Co.,* 17 B.R. 104, 106 (Bankr.D.Fla.1981).

The purpose of Chapter 11 is to give a struggling business like D & R Press a chance to rehabilitate and work through its debt problems. From the testimony presented, the Court believes that the Debtor will have the resources to pay the IRS the payments which are due in August and September of 1995 in the amounts of $10,917 and $39,489 respectively. At this point in the Debtor's case, the Court finds that it is not unreasonable to expect that a plan will be confirmed.

Further, the IRS is not unduly prejudiced by the Court's ruling. The Debtor and Darrell Ransom have testified that due to the ascending spiral of the profitability of their printing business, they will be able to make the required payments to the IRS in August and September. The total of these two amounts is $50,406. The IRS admits that the most it will recover by forcing a liquidation of Debtor's business is $50,758. By allowing the Debtor to stay in business, the Debtor will be able to generate income so that it can pay the IRS beyond the amount it would have received in a liquidation case.

## CONCLUSION

The Court finds that the IRS has not sustained its burden of proof in proving that the Debtor has an inability to effectuate a plan of reorganization. However, the Court

is concerned that the Debtor has not made his 1995 estimated tax payments. In the Debtor's Proposed Findings of Fact and Conclusions of Law, the Debtor stated that his personal estimated quarterly payments for the first quarter of 1995 had not been paid but would be paid within 24 hours. Consequently, the Court's denial of the Motion to Convert or Dismiss is contingent on the Debtor paying his estimated payment for the first quarter of 1995 to the IRS within 24 hours of the docketing of this order.

Turning to the Plan of Reorganization on file, the Court agrees with the U.S. Trustee that further evidence of financial information is needed. The Court must see a liquidation analysis, a projected cash flow and budget, and consolidated annual financial statements covering at least one fiscal year prior to the bankruptcy filing. This information must be incorporated into the Debtor's Plan by June 16, 1995. Further, the Debtor must file a disclosure statement with this information as well as the other requirements of Local Bankruptcy Rule 1100 by June 16, 1995. The Court's ruling incorporates the Court's findings of facts and conclusions of law pursuant to Fed.R.Bankr.P. 7052.