**In re WIN TRUCKING, INC., a Utah corporation, Debtor.**

**Bankruptcy No. 98B–25814.**

United States Bankruptcy Court, D. Utah, Central Division.

July 27, 1999.

---

David C. Johnston, Modesto, CA, for debtor.

William T. Neary, U.S. Trustee, Laurie A. Crandall, Assistant U.S. Trustee, Salt Lake City, UT.

Steve W. Lewis, Assistant Utah Attorney General, Salt Lake City, UT, for State of Utah, Utah State Tax Commission.

Weston L. Harris, Ray, Quinney and Nebeker, Salt Lake City, UT, for Navistar Financial Corporation.

Joel R. Dangerfield, Salt Lake City, UT, for debtor.

Mark H. Howard, Special Assistant U.S. Attorney, Salt Lake City, UT, for the U.S. Internal Revenue Service.

David E. Leta, Michael R. Johnson, Snell & Wilmer, Salt Lake City, UT, for Capital Associates of Jackson County, Inc.

## MEMORANDUM DECISION AND ORDER

JUDITH A. BOULDEN, Bankruptcy Judge.

No plan was filed within the 160–day time limit imposed by 11 U.S.C. § 1121(e) in this Chapter 11 case in which the debtor elected to be treated as a small business. The debtor eventually filed a plan, but not until in excess of 300 days after the order for relief had expired. Still later, the Debtor filed a withdrawal of its small business election in an attempt to rectify the untimely plan filing. The issue now presented is whether the late-filed plan may be confirmed, and the plan and plan proponent found to have satisfied the requirements of 11 U.S.C. § 1129(a)(1) and (2). After careful deliberation, the Court concludes that the Debtor's failure to timely file its plan and its belated attempt to withdraw its small business election preclude confirmation of the plan.

### FACTS

Win Trucking, Inc. (Debtor), filed a chapter 11 petition in California on April 8, 1998. The Debtor, through its principal and sole shareholder John D. Gravier (Gravier), agreed that the Debtor should elect to proceed as a small business. Gravier understood that if the Debtor made the election, it might achieve confirmation within approximately four months, and that the election would reduce the costs of reorganization. Because of this decision,

the Debtor's California Attorney placed an "X" in each of two boxes on the petition signifying that the Debtor was a small business as defined in 11 U.S.C. § 101(51C),[1] and that the Debtor elected to be treated as a small business pursuant to § 1121(e).

The Debtor conducts its trucking business primarily in Utah and California, but is a Utah corporation with its principal place of business in Utah. Of the Debtor's fourteen creditors, only the Internal Revenue Service was located in California. This circumstance resulted in the United States Trustee filing a motion to change venue within ten days of the filing of the Debtor's case. The motion was granted over the Debtor's objection by order dated May 29, 1998, and the case was transferred to the United States Bankruptcy Court for the District of Utah.

On June 3, 1998, the Debtor applied for appointment of a Utah Attorney to act as co-counsel for the Debtor, which application was granted by order dated June 18, 1998. The Debtor's California Attorney did not inform the Utah Attorney of the Debtor's small business election, although the case file transferred to Utah included the pleading containing the election.

Section 1102(a)(3) allows a party in interest to seek a court order ruling that a creditors' committee not be appointed in a small business case, but no party in this case so moved. A meeting of creditors was conducted on July 29, 1998 in Utah, and apparently as a result of lack of creditor interest, a creditors' committee was never formed.

Within a month of the change of venue, the Debtor's California Attorney learned that a close friend and fellow bankruptcy attorney had become seriously ill. It became necessary for the Debtor's California Attorney to take over numerous cases and

court appearances for the friend, and he spent the summer and fall of 1998 attending to his friend's medical needs and assisting with his law practice.

Both the 100–day and the 160–day deadlines fixed in § 1121(e)(1) and (2) passed and no party filed a plan of reorganization. On January 5, 1998, almost four months after the September 15, 1998 160–day deadline had passed, the United States Trustee filed a Motion to Convert or Dismiss the case (Motion). The Motion raised as one of the grounds for relief the Debtor's failure to file a disclosure statement and plan, although the Motion did not cite to § 1121(e). The Court denied the Motion, but instead directed the Debtor to file a disclosure statement and plan by February 10, 1999, which the Debtor did.

The Debtor did not proceed according to § 1125(f) or Bankr.D.Ut. LBR 1020–(b)[2] to obtain conditional approval of its disclosure statement and consolidate approval with a hearing on confirmation of its plan. As a result on March 12, 1999, at a hearing seeking approval of the adequacy of the Debtor's disclosure statement, the Court raised the issue of the Debtor's failure to proceed according to § 1121(e). Six days later, or over 340 days after the order for relief, the Debtor filed a Notice of Withdrawal of Small Business Election (Withdrawal) and served notice of the Withdrawal on only those persons who had requested special notice in the case. The Debtor did not file a motion to allow the Withdrawal, did not set a hearing regarding the Withdrawal, and no order allowing the Debtor to withdraw its small business election was entered.

On its second attempt the Debtor gained approval of the adequacy of a disclosure statement and proceeded to confirmation. Creditors voted to accept the plan and all bars to confirmation were eliminated ex-

---

1. All future Code references are to Title 11 unless otherwise specified.

2. Bankr.D.Ut. LBR 1020–1(b) sets forth the method of by which a small business that has

made a timely election to be treated under § 1121(e) may gain conditional and final approval of a disclosure statement.

cept those surrounding the Debtor's failure to timely comply with the plan filing requirements of the small business election. The Debtor now contends, alternatively, that its untimely filed plan should be confirmed because the Withdrawal was permitted by Fed.R.Bank.P. 1009(a), that its failure to file a plan or the Withdrawal before the 160–day deadline constituted "excusable neglect" under Fed.R.Bankr.P. 9024, or that the results of such neglect merely constitute "harmless error" under Fed.R.Bankr.P. 9005. One creditor joined in the Debtor's argument. The United States Trustee objected to confirmation of the Debtor's plan and to the Withdrawal.

## DISCUSSION

■ This court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(1). This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) and this Court can enter a final order. The Debtor bears the burden of proving that the requirements of § 1129(a) have been met. *In re Future Energy Corp.*, 83 B.R. 470, 481 (Bankr.S.D.Ohio 1988).

### Sections 1129(a)(1) and (2)

■ The Debtor must comply with all provisions of § 1129 prior to this Court entering an order confirming the Debtor's plan. Therefore, if either the plan does not comply or the plan proponent has not complied with the applicable provisions of Title 11, the plan cannot be confirmed. *Matter of Coventry Commons Associates*, 155 B.R. 446, 446 (E.D.Mich.1993) (if §§ 1129(a)(1) and (a)(2) are not met, debtor's plan is non-confirmable as a matter of law); *Cothran v. United States (Matter of Cothran)*, 45 B.R. 836, 838 (S.D.Ga.1984)

(sustaining bankruptcy courts denial of confirmation pursuant to § 1129(a)(2) because debtor spent cash proceeds from sale of collateral without court's permission); *In re Mahoney*, 80 B.R. 197, 202 (Bankr.S.D.Cal.1987) (§ 1129(a)(1) precluded confirmation where plan failed to satisfy § 1123(a)(7)). *But see, Kane v. Johns–Manville Corp.*, 843 F.2d 636, 647 (2nd Cir.1988) (concluding that Code violations were so insubstantial that they did not warrant overturning an entire plan of reorganization).

■ It is undisputed that the plan was not timely filed under § 1121(e) and therefore the plan does not comply with Title 11. In addition, the Debtor, as plan proponent, failed to comply with § 1121(e). As set forth below, the time provisions of § 1121(e) are an integral part of the statutory scheme regarding small businesses and reflect, not only in the legislative history but in the language of the provision itself, Congressional intent that plan filing time limits be strictly followed. However, the Debtor argues that because it filed the Withdrawal, it no longer has elected to be treated as a small business and therefore § 1121(e) is no longer an "applicable provision" with which it must comply.

### Section 1121(e)

■ Section 1121 of the Bankruptcy Code provides a method to expedite the reorganization of small businesses under chapter 11. Under this provision, a debtor that meets the definition of a small business found in § 101(51C) [3] can elect small business status and be relieved of certain requirements ordinarily applicable to chapter 11 debtors.[4] The statute does not pre-

---

**3.** Section 101(51C) states:

"small business" means a person engaged in commercial or business activities (but does not include a person whose primary activity is the business of owning or operating real property and activities incidental thereto) whose aggregate noncontingent liquidated secured and unsecured debts as of the date of the petition do not exceed $2,000,000.

**4.** The applicable small business provisions include: (i) § 101(51C) which defines the term "small business;" (ii) § 1102(a)(3) which dispenses with the official creditors committee upon a showing of "cause;" (iii) § 1121(e) which shortens the exclusivity period and provides a 160–day deadline for filing all plans; and (iv) § 1125(f) which provides more liberal provisions for disclosure and solicitation, and

scribe a specific method for electing to be treated as a small business and contains no provision for withdrawing the election once made.

The Code at § 1121(e), rather than the Federal Rules of Bankruptcy Procedure, contains time limits for small business reorganizations. The plain language of this statute allows reduction for cause of either the 100–day exclusivity period or the 160–day period during which any party may file a plan, and allows extension of the 100–day exclusivity period but only upon a showing that the need for an increase is caused by circumstances for which the debtor should not be held accountable.[5] Unlike the time limits fixed for filing a plan in a single asset real estate case found in § 362(d)(3) or the time limits for Chapter 12 plan confirmation in §§ 1221 and 1224,[6] § 1121(e) contains no provision for extending the 160–day period for plan filing.

The only court to rule on the binding effect of § 1121(e) has concluded that the language of the statute precludes an exten-

sion of the 160–day period. *In re Western Steel & Metals, Inc.*, 200 B.R. 873 (Bankr. S.D.Cal.1996) (granting creditor's motion to dismiss because § 1121(e) does not provide for an extension of the 160–day period, but specifically declining to consider whether the debtor's withdrawal of the election after the expiration of the 160 days excused the deadline.) *Collier on Bankruptcy, 15th edition (revised),* § 1121.05 ("There is no provision for an increase of the 160–day period.") The reasoning in *Western* is persuasive and the language of the statute is clear that Congress meant to omit a provision to extend the 160–day period. *Western* at 875 (citing *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (holding that where particular language is included in one section of a statute but omitted in another section of the same statute, courts should assume that Congress acted intentionally and purposefully in including and excluding the language)).[7]

The elimination of an extension provision is entirely consistent with the intent

an expedited timetable for confirming a plan. *See In re Western Steel & Metals, Inc.*, 200 B.R. 873, 874–75 (Bankr.S.D.Cal.1996) (citations omitted).

5. Section 1121(e) states:

In a case in which the debtor is a small business and elects to be considered a small business—

(1) only the debtor may file a plan until 100 days after the date of the order for relief under this chapter;

(2) all plans shall be filed within 160 days after the date of the order for relief; and

(3) on request of a party in interest made within the respective periods specified in paragraphs (1) and (2) and after notice and a hearing, the court may—

(A) reduce the 100–day period or the 160–day period specified in paragraph (1) or (2) for cause; and

(B) increase the 100–day period specified in paragraph (1) if the debtor shows that the need for an increase is caused by circumstances for which the debtor should not be held accountable.

6. Unlike § 1121(e), other provisions of the Code give the Court latitude to extend time

periods requiring parties to act for cause or other reasons. *See e.g.*, § 365(d)(1) 60–day time limit for assumption or rejection of an executory contract in a chapter 7; § 365(d)(4) 60–day time limit for assumption or rejection of an unexpired lease of nonresidential real property; § 1113(d)(1) fourteen day time limit for holding a hearing on the rejection of a collective bargaining agreement; § 1110(b) 60–day time limit to agree to perform all obligations under an aircraft or vessel contract.

7. It is worth noting that the failed bill to create a separate Chapter 10 for small businesses evidenced by S.1985, S.Rep. No. 168, 103 RD Cong., 1st Sess.1993, 1993 WL 444315 (Leg.Hist.) P.L. 103–394, Bankruptcy Reform Act of 1994, Omnibus Bankruptcy Reform, required at § 1021 that the debtor file a plan not later than 90 days after the order for relief, but that the Court could extend the period if the extension was substantially justified. The failure to timely file a plan constituted cause for conversion or dismissal under S. 1007. Current § 1121(e) extended the 90–day limit, but eliminated the possibility of open-ended extensions, even if substantially justified.

to accelerate the reorganization process for small businesses.[8] It is not a particularly onerous provision considering the absence of a date by which a debtor must achieve plan confirmation. *See, e.g.* § 1224 (45–day limit from plan filing for concluding the confirmation hearing in a chapter 12 case). The issue presented in this case is whether the time frames contained in § 1121(e) may be manipulated by simply withdrawing the election, without notice, motion or order, after the time periods have expired.

### Withdrawal of the Small Business Election

The Code does not prescribe the method a debtor must use to make the small business election, but at least two avenues are possible. Official Form 1, Information Regarding Debtor, includes two boxes that, if checked, indicate a debtor is a small business and elects to be treated as such. The Advisory Committee Note— 1995 Amendments, indicates that though the first box in the form was amended to require a small business filing under chapter 11 to identify itself, "the petition also is amended to offer a small business chapter 11 debtor an opportunity to exercise its right to elect to be considered a small business at the commencement of the case." *Id.* A debtor could also file a separate pleading either with the petition or at a later date. *See* Bankr.D.Ut. LBR 1020–1.[9]

The Debtor argues that although it did not actually amend its petition, the Court should construe the Withdrawal to have done so. Therefore, the Debtor asserts that by virtue of Fed.R.Bankr.P. 1009(a), which allows a debtor to amend its voluntary petition "as a matter of course at any time before the case is closed," the small business election no longer has any bearing on confirmation. The Court rejects this argument for two reasons. First, as indicated in the Advisory Committee Note, the box on the petition is presented merely for a debtor's convenience. It would be inconsistent to allow one debtor to withdraw its election because it checked the box on the petition, while Fed.R.Bankr.P. 1009(a) would not apply to another debtor that made its election by filing a separate pleading as allowed by Bankr.D.Ut. LBR 1020–1. Second, the Debtor's assertion that it has an absolute right to amend schedules pursuant to Fed.R.Bankr.P. 1009(a) is incorrect. *In re Calder*, 973 F.2d 862, 867 (10th Cir. 1992) (in spite of Fed.R.Bankr.P. 1009(a), amendment to claim additional exemptions may be denied if there is bad faith by the debtor or prejudice to creditors).

Section 1121(e)(3) requires that any request to alter the times for plan filing must be made within the times specified by the statute. This requirement that a request for an extension of time be made prior to the expiration of the time period is consistent with other Code provisions. *See e.g.* § 362(d)(3), § 365(d)(1), § 365(d)(4). It is therefore arguable that a small business election once made may be withdrawn if the withdrawal is accomplished within the time frames fixed in § 1121(e).[10] But before this Court ventures into the business of drafting non-existent provisions into the Code, it must

---

8. See statement of President Clinton upon enactment of the 1994 Bankruptcy Reform Act that the current law "has proven to be particularly burdensome and time consuming to both small business debtors and creditors, resulting in unnecessary costs and delays" and that the new legislation would "create a simplified 'fast-track' system for businesses ... meaning far quicker and less costly disposition of approximately 70 percent of the business reorganizations handled by the bankruptcy system." 1995 U.S.C.C.A.N. 3372–1.

9. Bankr.D.Ut. LBR 1030–1(a) states as follows:

   *Election to be Considered a Small Business in a Chapter 11 Reorganization Case.* In a Chapter 11 reorganization case, a debtor that is a small business may elect to be considered a small business by filing a written statement of election no later than the commencement of the meeting of creditors pursuant to 11 U.S.C. § 341(a) or by a later date as the court, for cause, may fix.

10. Fed.R.Bankr.P. 9006(b)(1) divides the enlargement of time into two phases. The first

find support in the case law under which analogous elections have been allowed to be withdrawn. Several cases have held that withdrawal of an election under § 1111(b) may occur, but only if timely within the context of the case, if no prejudice occurs to other parties, and only if there are material alterations in the disclosure statement or plan upon which the creditor relied.[11] Timeliness is a factor in whether an amendment to claimed exemptions is allowed.[12] Whether a motion for extension of time was filed prior to the expiration of the short time frames for confirmation of a Chapter 12 plan has been a factor in whether an extension is granted.[13] Courts have also strictly construed the time provisions in § 362(d)(3) that require, among other things, a single asset real estate debtor to file a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time or suffer the stay being lifted.[14]

■ Allowing withdrawal of the election will, in most instances, result in fur-

sought before a specified time period has run may be granted for cause shown at the court's discretion. The second sought after the expiration of the specified period may be granted where the failure to act was the result of excusable neglect. Fed.R.Bankr.P. 9006(b) covers only enlargement of time fixed by the Bankruptcy Rules or by court order, and not time fixed by the Code itself. It is of some assistance, however, to consider that the Bankruptcy Rules require a higher showing to obtain relief when time limits are missed entirely.

11. *In re Scarsdale Realty Partners, L.P.,* 232 B.R. 300, 301 (Bankr.S.D.N.Y.1999) (allowing creditor to rescind its election under § 1111(b) because it was made within the time limit under Fed.R.Bankr.P. 3014 and in reliance on a materially defective disclosure); *Mutual Life Ins. Co. of New York v. Paradise Springs Assoc. (In re Paradise Springs Assoc.),* 165 B.R. 913, 916–920 (Bankr.Ariz.1993) (gathering cases under § 1111(b) generally holding that the election cannot be withdrawn subsequent to the time the creditor made the election absent material alterations that are objectively and materially adverse to creditor); *In re Bloomingdale Partners,* 155 B.R. 961 (Bankr.N.D.Ill.1993) (withdrawal of an election under § 1111(b) must be made timely, and, once the plan has been filed, only if the amended plan makes material modifications); *In re Keller,* 47 B.R. 725, 730 (Bankr. N.D.Iowa 1985) (court did not allow creditor to revoke its § 1111(b) election after plan voting had concluded, because to do so would materially alter the Debtors' prospects of confirmation because it would dramatically alter the Debtors' negotiating position with its other creditors).

12. *In re Calder,* 973 F.2d 862, 867 (10th Cir. 1992) (amendment to claim additional exemptions denied where debtor waited more than four years); *In re Cudeyro,* 213 B.R. 910, 915–19 (Bankr.E.D.Pa.1997) (rejecting that Fed. R.Bankr.P. 1009(a) provides an absolute right to amend exemptions schedules, and finding that the delay in asserting exemption was prejudicial to creditors); *Szymanski v. Herzog,* 189 B.R. 5 (N.D.Ill.1995) (rejecting a twenty-one month delay in amending schedules to claim a personal injury settlement as exempt).

13. *Greseth v. Fed. Land Bank of St. Paul,* 78 B.R. 936 (D.Minn.1987) (diligent Chapter 12 debtor who timely filed a plan and caused a confirmation hearing to be held 45 days later, but then amended the plan with a subsequent confirmation hearing held within the following 30 days, qualified for an extension of the statutory 45 day confirmation limit); *In re Novak,* 103 B.R. 403, (Bankr.E.D.N.Y.1989) (gathering cases) (delay in meeting Chapter 12 deadlines without explanation or excuse and without application for extension constituted cause to lift stay); *In re Ryan,* 69 B.R. 598 (Bankr.M.D.Fla.1987) (Chapter 12 debtor was allowed to withdraw its original Chapter 12 plan filed prematurely that could not be confirmed, because the 90–day period for filing of a plan had not yet run, and no creditor would be prejudiced).

14. *In re Archway Apartments, Ltd.,* 206 B.R. 463, 465–66 (Bankr.M.D.Tenn.1997) (acknowledging that § 362(d)(3) requires relief from the stay if a plan is not filed within the 90–day limit, but conditioning, rather than lifting the stay where plan was filed one week late by mistake); *In re Pensignorkay, Inc.,* 204 B.R. 676 (Bankr.E.D.Pa.1997) (lifting stay where plan was not filed within 90 days); *In re LDN Corp.,* 191 B.R. 320, 327 (Bankr. E.D.Va.1996) (finding that relief was mandatory where provisions of § 362(d)(3) were not strictly complied with where debtor filed plan two months after deadline and failed to request a timely extension of the 90–day period); *In re Philmont Dev. Co.,* 181 B.R. 220, 225 (Bankr.E.D.Pa.1995) (after finding debtor's property fell within the definition of § 101(51B), stay was lifted because a plan

ther delay. Such was certainly the circumstance here where the Debtor waited over 300 days to file its plan and then did so only after the United States Trustee filed a motion to convert or dismiss the case. It may also create the potential for abuse by allowing debtors to flip-flop between either making or not making the small business election, adding to the confusion of creditors and creating additional opportunity for delay. Certainly if a party were prejudiced because an unsecured creditors' committee had not been formed, or as a result of the liberal provisions for disclosure and plan solicitation, a court would likely not allow a withdrawal of the election. Absent a clearer Congressional statement regarding withdrawal of the election, the Court concludes there is no absolute right to withdraw an election once made. But, as set forth above, there is some analogous case law support to allow a withdrawal of the election if the withdrawal is timely made. If a withdrawal of the election to be treated as a small business is to be allowed at all, it must be for good cause shown, made within the time fixed by § 1129(e), and then only if no prejudice occurs to any party as a result of the withdrawal. The Court finds no persuasive authority to allow withdrawal of an election that is made after the last date for filing a plan fixed by § 1121(e) has passed.

### Debtor's Request for Relief Under Fed.R.Bankr.P. 9024 and 9005

■■■■■ The Debtor argues that the Court should grant relief from its failure to timely file a plan or Withdrawal under Fed.R.Bankr.P. 9024, which incorporates Fed.R.Civ.P. 60, and provides that a party can be relieved "from a final judgement, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect." The Debtor's reliance on Fed.R.Bankr.P. 9024 is misplaced. It is well settled that a final judgement is required to support a Fed.R.Civ.P. 60(b) motion. *See 12 Moore's Federal Practice,* § 60.23 at 60–75

was not filed within 90 days of the order of

(3d ed.1997). The Debtor didn't move for the Court to allow the Withdrawal of the small business election, and therefore there is no final order or judgement to set aside. Thus, Fed.R.Bankr.P. 9024 is inapplicable.

■■■■ Even had the matter arisen in a different procedural posture, the Debtor's claim of excusable neglect would be unavailing. The Debtor cites *In re Magouirk,* 693 F.2d 948, 951 (9th Cir.1982) *superceded* by Fed.R.Bankr.P. 9006(b)(3), for the proposition that "excusable neglect" in the context of Fed.R.Civ.P. 60(b) relief should be "liberally construed, especially [in] those instances where the order or judgment forecloses trial on the merits of a claim." *Magouirk* referred to a five-factor test to determine excusable neglect under prior Fed.R.Bankr.P. 404 that included whether the delay was beyond the reasonable control of the person whose duty it was to perform. *Id.* at 951. However, in the Tenth Circuit a higher standard is required to prove excusable neglect. *Woods v. Kenan (In re Woods),* 173 F.3d 770, 779 (10th Cir.1999) (affirming that Fed.R.Civ.P. 60(b)(1) relief is generally not available for the mere carelessness of a party, citing *Pelican Prod. Corp. v. Marino,* 893 F.2d 1143, 1146 (10th Cir.1990)); *Cashner v. Freedom Stores, Inc.,* 98 F.3d 572, 576 (10th Cir.1996) (relief under Fed. R.Civ.P. 60(b) is extraordinary and may only be granted in exceptional circumstances) (cited with approval in *Mehdipour v. City of Oklahoma City,* 1999 WL 114378, *2 (10th Cir.1999)); *Hudson Oil Co., Inc. v. Schweitzer (In re Hudson Oil Co., Inc.),* 1992 WL 219719, *3 (D.Kan. 1992) (rejecting the assertion that the Tenth Circuit had adopted the liberal minority "excusable neglect" test found in *Magouirk,* but holding that even under *Magouirk* no court has found excusable neglect where the failure to timely file was clearly the fault of the party who failed to perform). This is in keeping with the Tenth Circuit's narrow application of the

relief).

Supreme Court's interpretation of excusable neglect under Fed.R.Bankr.P. 9006(b)(1) found in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 388–89, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); *see Broitman v. Kirkland (In re Kirkland),* 86 F.3d 172, 175 (10th Cir.1996) (declining to apply the flexible test concerning excusable neglect in *Pioneer* to the "good cause" standard under Fed.R.Civ.P. 4(j)); *accord Jones v. Arross,* 9 F.3d 79, 81 (10th Cir.1993) (emphasizing that the interpretation of "excusable neglect" in *Pioneer* related to Fed.R.Bankr.P. 9006(b)(1) applies only to standard for filing proofs of claim in Chapter 11).

The excusable neglect urged by the Debtor is its California Attorney's preoccupation with the affairs of his ill colleague that hindered the timely filing of a plan or Withdrawal of the Debtor's small business election. While the cause of the delay is certainly unfortunate, there is no specific showing that the California Attorney's press of business precluded the Debtor from filing its plan. Gravier, the Debtor's principal knew of the small business election and that the election provided for expedited proceedings. The record is silent regarding why the Debtor's Utah Attorney did not proceed with the timely filing of a plan, or at least inquire regarding the applicability of Bankr.D.Ut. LBR 1020–1(a) as a matter of course. Even using the *Magouirk* test, the failure to file a plan or Withdrawal of the election was not beyond the reasonable control of the Debtor's California or Utah Attorneys. Finally, the circumstance of the change of venue is not a reason to excuse timely filing of the plan or Withdrawal. When the Debtor decided to file in California and decided to elect small business treatment, it was reasonably foreseeable that a venue

challenge may occur since only one creditor, the Internal Revenue Service, was located in California. The United States Trustee moved quickly to change venue, the case was transferred to Utah, the Debtor obtained its Utah Attorney, and a new meeting of creditors was held all within three and a half months of filing. The Debtor had from June through September 15, 1998, the time between when it applied for appointment of its Utah Attorney and the date the 160–day deadline ran to either decide to move to withdraw its small business election or to timely file its plan.

The Debtor also requests this court regard as "harmless error" it's failure to meet the 160–day filing deadline. Fed.R.Civ.P. 61, made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 9005,[15] governs "harmless error" review. For substantially the same reason as set forth above, Fed.R.Bankr.P. 9005 is inapplicable to the instant case because the Debtor has no judgment or order to set aside. The Debtor also argues that because it gained no specific benefit from making the small business election, the Court should ignore its failure to timely comply with § 1121(e). The Court is loath to apply this kind of "no harm-no foul" test that implies that a debtor must receive a direct benefit before the Court will apply clear provisions of the Code. Had Congress desired to establish a *quid pro quo* criteria for statutory compliance, it would have so indicated.

### CONCLUSION

The plain meaning of § 1121(e) requires that all reorganization plans be filed within 160–days from the order of relief once a qualifying small business has elected to be treated as a small business chapter 11. The Debtor has failed to file a plan within

---

**15.** Fed.R.Bankr.P. 9005 provides as follows:

[N]o error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for ... vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such

action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

that time period and has not sought a timely withdrawal of its small business election. The Debtor has therefore failed to comply with 11 U.S.C. § 1129(a)(1) and (2). It is therefore

**ORDERED,** that confirmation of Debtor's plan is denied.